# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| JAMES A. HENSON, JR. | * | |
| Plaintiff | * | |
| v. | * | Civil Action No. JKB-16-3809 |
| P. SPEIR, *et al.*, | * | |
| Defendants | * | |
| | *** | |

## **MEMORANDUM**

Pending is a motion to dismiss or, in the alternative, motion for summary judgment filed by defendants Lieutenant Patrick Speir, Sergeant Charles Bielanski, Lauren Beitzel, Melissa Harr and Monica Wilson.[1] ECF 17. Plaintiff has responded. ECF 19.[2] Upon review of the papers filed, the court finds a hearing in this matter unnecessary. *See* Local Rule 105.6 (D. Md. 2016). For the reasons stated below, defendants' dispositive motion will be granted.

### I. Background

The case was instituted upon receipt of a civil rights complaint filed by plaintiff James Henson, an inmate currently confined at the North Branch Correctional Institution ("NBCI"). ECF 1. Plaintiff named as defendants Lieutenant Patrick Speir, Sergeant Charles Bielanski, "Subordinates in Housing Unit #1", Jannette Simmons,[3] Lauren Beitzel, Melissa Hart and Monica Wilson. ECF 1, p. 1. He stated that the named defendants ignore that prison gangs still maintain a "hit" on plaintiff in retaliation for his using the prison grievance system. ECF 1 at 4.

---

[1] The Clerk shall amend the docket to reflect the correct spellings of defendants' names.

[2] Plaintiff's filings are difficult to decipher. To the extent plaintiff's response raises new claims, such claims are not properly before the court and will not be considered in the context of this opinion.

[3] Simmons has not been served with the complaint. The complaint against her shall be dismissed without prejudice.

He claims that from September 5, 2005 through November 14, 2016, unidentified correctional and psychological staff have filed false reports against him in order to prevent him from exercising his rights thought the prison grievance process and in order to keep him in solitary confinement.[4] *Id*. Henson also claims he was assaulted by another inmate on July 28, 2014,

---

[4] Plaintiff has filed numerous cases regarding "hits" placed on him and alleging correctional employees intentionally place him in cells with dangerous inmates. There is no evidence to support his claims that a "hit" has been placed on him or that staff have been deliberately indifferent to his safety or utilized excessive force against him.

Plaintiff's claims of a vast conspiracy against him have been investigated and found unsubstantiated, resulting in the dismissal of the claim both administratively and judicially. *See, e.g.*, *Henson v. Likin*, Civil Action No. RWT-11-2719 (D. Md.); *Henson v. Miller*, Civil Action No. RWT-12-763 (D. Md.); *Henson v. Lambert*, Civil Action No. RWT-12-3271 (D. Md.); *Henson v. Smith, et al.*, Civil Action No. RWT-13-2266 (D. Md.); *Henson v. Bishop*, RDB-14-2131 (D. Md.) (dismissing for failure to exhaust administrative remedies but noting affidavits of all correctional staff that they had not submitted false incident reports, encouraged the submission of falsified medical reports, or instructed anyone to house plaintiff with violent, dangerous gang members). Those claims will not be addressed again.

He previously filed suit regarding an assault as well as allegations concerning Correctional Officers Wilson, Merling, Lark, and Weber assigning him to a cell with Inmate Jenkins, an alleged "professed racist." *See Henson v. Likin*, Civil Action No. RWT-11-2719 (D. Md.). Defendants were granted summary judgment in that case.

Plaintiff previously filed suit against CO II Jesse Lambert, CO II Nicholas Soltas, CO II Steven Miller, CO II Randolph Bennett, CO II Christopher Ortt, CO II Joshua Tart, and CO II Shawn Murray, alleging they assigned him to cells with gang members and advised gang members on the unit that plaintiff was a rapist. He reiterated his claim regarding the assault by Jenkins and sought protective custody and a federal investigation. *See Henson v. Lambert*, Civil Action No. RWT-12-3271. Defendants were granted summary judgment in that case.

Plaintiff's previously filed suit against Lt. Dale Smith, Case Worker Gainer, Caseworker Sindy, Lt. Miller, Sgt. Iser, Sgt. Guilliam, Sgt. Tyndale, again alleging overall failure to protect and lack of a policy to address risks to plaintiff's health and safety and an overarching conspiracy, was likewise dismissed. *See Henson v. Smith*, Civil Action No. RWT-13-2266 (D. Md.).

Plaintiff previously sued Warden Frank B. Bishop, Jr., Lt. William E. Miller, Major Robert M. Friend, Lt. Bradley Wilt, Sergeant Walter Iser, CO II Jesse L. Lambert, CO II Christopher Anderson, CO II Nicolas Soltas, and CO II Steven Miller alleging that he was the target of a campaign of murder carried out by correctional staff and specifying an assault on June 20, 2014. *See Henson v. Bishop*, Civil Action No. RDB-14-2131 (D. Md.). Defendants were granted summary judgment in that case.

Other complaints raising bald conspiracy claims were dismissed *sua sponte* by the court. *See Henson v. Wilt, et al.*, Civil Action No. RDB-14-3724 (D. Md.); *Henson v. Friend et al.*, Civil Action No. RDB-14-3825 (D. Md.), and *Henson v. Miller et al.*, Civil Action No. RDB-15-28 (D. Md.).

Where there has been a final judgment on the merits in a prior suit, an identity of the cause of action in both the earlier and the later suit, and an identity of parties or their privies in the two suits, *res judicata* is established.

with the assistance of unnamed correctional officers, and remains in constant pain. *Id*. He seeks access to the courts, protective custody, an independent federal investigation, and medical care. ECF 1 at 3.

**A.     Administrative Remedies**

Plaintiff filed an administrative remedy on November 14, 2016 (NBCI-2511-16), raising the same allegations presented in the instant complaint. ECF 17-2, at 13-15. The ARP was dismissed as repetitive to three other ARP filings. *Id*. The instant civil rights complaint was instituted on November 18, 2016. ECF 1. On November 22, 2016, after already instituting this case, plaintiff took an appeal of the ARP to the Commissioner of Corrections ("Headquarters Appeal"). *Id*. at 11-12. On November 30, 2016, the appeal was dismissed but plaintiff was allowed to resubmit the appeal with additional documentation on or before December 15, 2016. *Id*. Plaintiff failed to resubmit the appeal with the requested information but instead, on December 22, 2016, filed a grievance with the Inmate Grievance Office ("IGO"), which was ultimately dismissed. *Id*. at 10, 16.

**B.     Factual Response to Claims**

Bielanski and Speir each aver that they did not ignore any known threats to plaintiff and that they are not aware of any documented "hits" or threats against plaintiff. ECF 17-2 at 2-3. Bielanski and Speir deny permitting or encouraging other inmates to assault plaintiff. *Id*. They further deny falsifying documents or otherwise retaliating against plaintiff for any reason. *Id*.

---

*See Pension Ben. Guar. Corp. v. Beverley*, 404 F. 3d 243, 248 (4th Cir. 2005). The doctrine of *res judicata* precludes the assertion of a claim after a judgment on the merits in a prior suit by the same parties on the same cause of action. *See Meekins v. United Transp. Union*, 946 F. 2d 1054, 1057 (4th Cir. 1991). In addition, "'[n]ot only does res judicata bar claims that were raised and fully litigated, it prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding.'" *Id*. (quoting *Peugeot Motors of America, Inc. v. Eastern Auto Distributors, Inc.*, 892 F. 2d 355, 359 (4th Cir. 1989)).

Lastly, they each deny being aware of any other staff threatening plaintiff, ignoring threats against him, or otherwise retaliating against him. *Id*.

For their part Wilson, Harr, and Beitzel, advise that they are mental healthcare providers at NBCI and as such do not participate in the provision of any medical treatment or the prescription of medications for plaintiff. ECF 17-2 at 4-9. Each states that he has never been involved in, interfered with, or delayed the provision of medical care to plaintiff. *Id*. They aver that they have no authority over plaintiff's cell assignment or segregation time. *Id*. They declare that they did not conspire with correctional staff to maintain plaintiff on segregation status or willfully ignore any documented threats against him. *Id*. They also each state that they have never filed a false report against plaintiff. *Id*.

Defendants demonstrate that plaintiff has not been prevented from accessing the ARP process and have provided to the court the record of plaintiff's ARP filings, which demonstrate that from August 14, 2009, to April 10, 2017, plaintiff has filed 228 ARPs. ECF 17-2 at 17-27.

As to plaintiff's allegations regarding his confinement on disciplinary segregation, defendants explain that from April 25, 2013, through April 12, 2016, plaintiff was found to have violated NBCI's rule on 12 occasions. ECF 17-2 at 28. After a hearing, plaintiff received segregation time, as well as other sanctions. *Id*. Defendants note that, on occasion, plaintiff has declined to participate in the segregation review or disciplinary hearings. *Id*. at 43, 44, 45. Additionally, they observe that he has also refused to cooperate with medical examination or treatment. *See Henson v. Weber*, Civil Action No. JKB-17-507 (D. Md.), ECF 9-1 at 13-17. Lastly, defendants indicate that plaintiff previously admitted that he "chose to remain housed in

4

solitary confinement, on disciplinary lock-up, from Monday 27 March 2006 . . . thru present day 2016." *See Henson v. Bishop*, Civil Action No. WMN-16-976, ECF 1 at 3.

## II. Standard of Review

### A. Motion to Dismiss

The purpose of a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) is to test the sufficiency of the plaintiff's complaint. *See Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999). The dismissal for failure to state a claim upon which relief may be granted does not require defendant to establish "beyond doubt" that Plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561 (2007). Once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint. *Id*. at 563. The court need not, however, accept unsupported legal allegations, *see Revene v. Charles County Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusional factual allegations devoid of any reference to actual events, *see United Black Firefighters v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

### B. Motion for Summary Judgment

Summary judgment is governed by Federal Rule of Civil Procedure 56(a), which provides in part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

5

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting former Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.*, 290 F.3d 639, 644-45 (4th Cir. 2002). Because plaintiff is self-represented, his submissions are liberally construed. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). But, the court must also abide by the "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'" *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex Corporation v. Catrett*, 477 U.S. 317, 323–24 (1986)).

In *Anderson*, the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." 477 U.S. at 249. A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could

return a verdict for the nonmoving party." *Id*. at 248. Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact. No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof. *See Catrett*, 477 U.S. at 322-23. Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing the existence of a genuine issue of material fact for trial.

### III. Discussion

Defendants raise the affirmative defense that plaintiff has failed to exhaust his administrative remedies. If plaintiff's claim has not been properly presented through the administrative remedy procedure, then it must be dismissed pursuant to the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. The PLRA provides in pertinent part:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).

For purposes of the PLRA, "the term 'prisoner' means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release,

7

or diversionary program." 42 U.S.C. § 1997e(h). The phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *see Chase v. Peay*, 286 F. Supp. 2d 523, 528 (D. Md. 2003), *aff'd*, 98 F. App'x 253 (4th Cir. 2004).

Notably, administrative exhaustion under § 1997e(a) is not a jurisdictional requirement and does not impose a heightened pleading requirement on the prisoner. Rather, the failure to exhaust administrative remedies is an affirmative defense to be pleaded and proven by defendants. *See Jones v. Bock*, 549 U.S. 199, 215-16 (2007); *Anderson v. XYZ Correctional Health Services, Inc.*, 407 F.2d 674, 682 (4th Cir. 2005).

Nevertheless, a claim that has not been exhausted may not be considered by this court. *See Bock*, 549 U.S. at 220. In other words, exhaustion is mandatory. *Ross v. Blake*, ____ U.S. ____, 136 S. Ct. 1850, 1857 (2016). Therefore, a court ordinarily may not excuse a failure to exhaust. *Blake*, 136 S. Ct. at 1856 (citing *Miller v. French*, 530 U.S. 327, 337 (2000) (explaining "[t]he mandatory 'shall'. . . normally creates an obligation impervious to judicial discretion")).

Ordinarily, an inmate must follow the required procedural steps in order to exhaust his administrative remedies. *Moore v. Bennette*, 517 F.3d at 725, 729 (4th Cir. 2008); *see Langford v. Couch*, 50 F. Supp. 2d 544, 548 (E.D. Va. 1999) ("[T]he. . . . PLRA amendment made clear that exhaustion is now mandatory."). Exhaustion requires completion of "the administrative review process in accordance with the applicable procedural rules, including deadlines." *Woodford v. Ngo*, 548 U.S. 81, 88, 93 (2006). This requirement is one of "proper exhaustion of administrative remedies, which 'means using all steps that the agency holds out, and doing so

*properly* (so that the agency addresses the issues on the merits).'" *Woodford*, 548 U.S. at 93 (quoting *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002)). But, the court is "obligated to ensure that any defects in [administrative] exhaustion were not procured from the action or inaction of prison officials." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007); *see Kaba v. Stepp*, 458 F.3d 678, 684 (7th Cir. 2006).

An inmate need only exhaust "available" remedies. 42 U.S.C. § 1997e(a). In *Blake*, the Supreme Court rejected a "freewheeling approach to exhaustion as inconsistent with the PLRA." 136 S. Ct. at 1855. In particular, it rejected a "special circumstances" exception to the exhaustion requirement. *Id*. at 1856-57. But, it reiterated that "[a] prisoner need not exhaust remedies if they are not 'available.'" *Id*. at 1855. "[A]n administrative remedy is not considered to have been available if a prisoner, through no fault of his own, was prevented from availing himself of it." *Moore*, 517 F.3d at 725.

The Supreme Court stated in *Blake* that an administrative remedy is available if it is "'capable of use' to obtain 'some relief for the action complained of.'" 136 S. Ct. at 1859 (quoting *Booth v. Churner*, 532 U.S. 731, 738 (2001)). Thus, an inmate must complete the prison's internal appeals process, if possible, before bringing suit. *See Chase*, 286 F. Supp. 2d at 529-30. As a prisoner, plaintiff is subject to the strict requirements of the exhaustion provisions. *See Nussle*, 534 U.S. at 528 (no distinction is made with respect to exhaustion requirement between suits alleging unconstitutional conditions and suits alleging unconstitutional conduct). Exhaustion is also required even though the relief sought is not attainable through resort to the administrative remedy procedure. *See Booth*, 532 U.S. at 741.

9

The Maryland Department of Public Safety and Correctional Services ("DPSCS") has an established "administrative remedy procedure" ("ARP") for use by Maryland State prisoners for "inmate complaint resolution." *See generally* Md. Code Ann., Corr. Servs. ("C.S.") §§ 10-201 *et seq*. (2008 Repl. Vol.); Md. Code Regs. ("COMAR") 12.07.01.01B(1) (defining ARP). The grievance procedure applies to the submission of "grievance[s] against . . . official[s] or employee[s] of the Division of Correction." C.S. § 10-206(a).

Regulations promulgated by DPSCS concerning the administrative remedy procedure define a "grievance" to include a "complaint of any individual in the custody of the [DOC] . . . against any officials or employees of the [DOC] . . . arising from the circumstances of custody or confinement." COMAR 12.07.01.01B(8). An inmate "must exhaust" the ARP process as a condition precedent to further review of the inmate's grievance. *See* C.S. § 10-206(b); *see also* COMAR 12.07.01.02.D; OPS.185.0002.02.[5]

To pursue a grievance, a prisoner confined in a Maryland prison may file a grievance with the Inmate Grievance Office ("IGO") against any DOC official or employee. C.S. § 10-206(b). However, if the prison has a grievance procedure that is approved by the IGO, the prisoner must first follow the institutional ARP process, before filing a grievance with the IGO. *See* C.S. § 10-206(b); *see also* OPS.185.0002.02. There is an established administrative remedy procedure process that applies to all Maryland prisons. OPS.185.0002.02. Therefore when the

---

[5] OPS.185.0002 is an Executive Directive created by the Maryland Department of Public Safety and Correctional Services, titled "Administrative Remedy Procedure (ARP)" ("ARP Directive") available for review at http://itcd.dpscs.state.md.us/PIA. "[A] court may properly take judicial notice of 'matters of public record' and other information that, under Federal Rule of Evidence 201, constitute 'adjudicative facts.'" *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508 (4th Cir. 2015); *see also* Fed. R. Evid. 201(b)(2) (stating that a "court may judicially notice a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned").

ARP process provides a possible remedy, it must be followed and completed before an inmate may file a grievance with the IGO.

The ARP process consists of multiple steps. For the first step, a prisoner is required to file his initial ARP with his facility's "managing official," OPS.185.0002.05C(1), which is defined by C.S. § 1-101(k) "as the administrator, director, warden, superintendent, sheriff, or other individual responsible for the management of a correctional facility." In the DOC, each facility's warden is responsible for the ARP at the institutional level. OPS.185.0002.05E. Moreover, the ARP request must be filed within 30 days of the date on which the incident occurred, or within 30 days of the date the prisoner first gained knowledge of the incident or injury giving rise to the complaint, whichever is later. OPS.185.0002.05J.

The second step in the ARP process occurs if the managing official denies a prisoner's initial ARP. The prisoner has 30 days to file an appeal with the DPSCS's Deputy Secretary for Operations or that official's designee. OPS.185.0002.05L. For prisoners in DOC facilities, the Commissioner of Correction is the official to whom this appeal is sent. *Id.*

If the Commissioner of Correction denies an appeal, the prisoner has 30 days to file a grievance with the IGO. OPS.185.0002.05D; C.S. § 10-206(a); C.S. § 10-210; COMAR 12.07.01.05B. When filing with the IGO, a prisoner is required to include copies of the following: the initial request for administrative remedy, the warden's response to that request, a copy of the ARP appeal filed with the Commissioner of Correction, and a copy of the Commissioner's response. COMAR 12.07.01.04(B)(9)(a). If the grievance is determined to be "wholly lacking in merit on its face," the IGO may dismiss it without a hearing. C.S. § 10-207(b)(1); *see* COMAR 12.07.01.07B. An order of dismissal constitutes the final decision of the Secretary of DPSCS for purposes of judicial review. C.S. § 10-207(b)(2)(ii). However, if a

hearing is deemed necessary by the IGO, the hearing is conducted by an administrative law judge with the Maryland Office of Administrative Hearings. *See* C.S. § 10-208(2)(c); COMAR 12.07.01.07-.08. The conduct of such hearings is governed by statute. *See* C.S. § 10-208; COMAR 12.07.01.07D; *see also* Md. Code Ann., State Gov't §§ 10-101 et seq.

A decision of the administrative law judge denying all relief to the inmate is considered a final agency determination. C.S. § 10-209(b)(1)(i) & (ii); COMAR 12.07.01.10A. However, if the ALJ concludes that the inmate's complaint is wholly or partly meritorious, the decision constitutes a recommendation to the Secretary of DPSCS, who must make a final agency determination within fifteen days after receipt of the proposed decision of the administrative law judge. *See* C.S. § 10-209(b)(2), (c).

The final agency determination is subject to judicial review in Maryland State court, so long as the claimant has exhausted his/her remedies. *See* C.S. § 10-210. An inmate need not, however, seek judicial review in State court in order to satisfy the PLRA's administrative exhaustion requirement. *See, e.g.*, *Pozo*, 286 F.3d at 1024 ("[A] prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court.").

Exhausting administrative remedies after a complaint is filed will not save a case from dismissal for failure to exhaust administrative remedies. *See Neal v. Goord*, 267 F.3d 116, 121-22 (2d Cir. 2001) (overruled on other grounds). In *Freeman v. Francis*, 196 F.3d 641, 645 (6th Cir. 1999), the court stated: "The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal court. . . . The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." *See Kitchen v. Ickes*, Civil Action No. DKC-14-2022, 2015 WL 4378159, at *8 (D. Md. July 14, 2015); *see also Miller v.*

*McConneha, et al*, JKB-15-1349, 2015 WL 6727547, at *3-4 (D. Md. November 11, 2015); *Kaufman v. Baynard*, CIV.A. 1:10-0071, 2012 WL 844480 (S.D.W. Va. Feb. 3, 2012), *report and recommendation adopted*, CIV.A. 1:10-0071, 2012 WL 844408 (S.D. W. Va. Mar. 12, 2012); *Blackburn v. S. Carolina*, No. C A 006-2011-PMD-BM, 2009 WL 632542, at *1 (D.S.C. Mar. 10, 2009) *aff'd*, 404 F. App'x 810 (4th Cir. 2010).

The undisputed evidence demonstrates that on November 14, 2016, plaintiff submitted ARP NBCI-5211-16. ECF 17, Ex 1 at 13-15. On November 30, 2016, plaintiff filed a headquarters appeal. The headquarters complaint was dismissed with permission to refile on or before December 15, 2016. *Id*. Without submitting the requested information, plaintiff instead filed a grievance with the IGO.

Although plaintiff filed an opposition response to the dispositive motion (ECF 19), he does not dispute that he failed to properly and fully exhaust his claim **before** bringing this case. The instant case was docketed on November 18, 2016. ECF 1. Plaintiff filed the headquarters appeal on November 22, 2016, and the grievance with the IGO on December 22, 2016. As plaintiff failed to exhaust his administrative remedies prior to instituting his complaint, the complaint shall be dismissed.

## IV. CONCLUSION

For the foregoing reasons, defendants' motion to dismiss or, in the alternative, for summary judgment will be granted and judgment will be entered in favor of defendants. Plaintiff's complaint against Jannette Simmons is dismissed without prejudice. A separate Order follows.

13

Dated this 27th day of February, 2018.

FOR THE COURT:

/s/
James K. Bredar
Chief Judge